1
2
3
4
5
6
7              UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF WASHINGTON
8                        AT SEATTLE

9  OMAX CORPORATION, a Washington
10 corporation,

11           Plaintiff,                    Case No. C04-2334L

12      v.                                 ORDER ON MOTIONS FOR
                                           UNENFORCEABILITY BASED ON
13 FLOW INTERNATIONAL                      NON-DISCLOSURE AND
   CORPORATION, a Washington corporation,  MISREPRESENTATIONS
14
            Defendant.
15
   FLOW INTERNATIONAL
16 CORPORATION, a Washington corporation,

17          Counterclaimant,

18      v.

19 OMAX CORPORATION, a Washington
   corporation,
20
            Counterclaim Defendant.
21

22                           **I. Introduction**

23      This matter comes before the Court on "Omax's Motion and Memorandum for Partial

24 Summary Judgment of Unenforceability of Flow's '452 Patent Due to Flow's Failure to Disclose

25

26 ORDER ON MOTIONS FOR
   UNENFORCEABILITY BASED ON           1
27 NON-DISCLOSURE AND
   MISREPRESENTATIONS
28

this Litigation to the United States Patent and Trademark Office" (Dkt. # 93) and "Omax's Motion and Memorandum for Partial Summary Judgment of Unenforceability of Flow's '452 Patent Due to Flow's Misrepresentations Under 37 C.F.R. § 1.97" (Dkt. # 96). In the first motion, Omax argues that U.S. Patent No. 6,996,452 ("the '452 patent") is invalid because Flow failed to disclose the instant litigation to the United States Patent and Trademark Office ("USPTO"). In the second motion, Omax argues that the '452 patent is invalid because Flow submitted a supplemental Information Disclosure Statement ("IDS") with a false statement. Flow argues that neither motion meets the inequitable conduct standard for invalidity.[1]

## II. Background

Omax filed this patent infringement action in November, 2004, claiming infringement by Flow of two Omax patents, U.S. Patent No. 5,508,596 ("the '596 patent") and its continuation patent, U.S. Patent No. 5,892,345 ("the '345 patent"). Omax also sought a declaratory judgment of non-infringement of Flow's one patent at that time, U.S. Patent No. 6,766,216 ("the '216 patent"). On March 1, 2005, the Clerk of Court of the Western District of Washington informed the USPTO of this litigation, in compliance with his statutory obligation. 35 U.S.C. § 290; see also Report on the Filing or Determination of an Action Regarding a Patent or Trademark (Dkt. # 15). This report referenced these three patents.

Flow began applying for the continuation patent for the '216 patent (what would become the '452 patent) in March, 2004. In the meantime, Omax had filed the instant suit, arguing, among other things, that the '216 patent is invalid because it is anticipated or rendered obvious by the Henning publication. At one point during the prosecution of the '452 patent, Flow's patent attorney, Ellen Bierman, submitted a supplemental IDS to the USPTO. This statement

---

[1] This matter can be decided on the memoranda, declarations, and exhibits submitted by the parties. Plaintiff's request for oral argument is therefore DENIED.

ORDER ON MOTIONS FOR
UNENFORCEABILITY BASED ON            2
NON-DISCLOSURE AND
MISREPRESENTATIONS

1  included references to two applications that constitute "prior art," of which Bierman had become
2  aware through another action. It also updated the USPTO on a number of other documents and
3  patents that did not constitute prior art, as they were filed contemporaneously with or after the
4  parent patent of the '452 patent. The '452 patent issued on February 7, 2006 and Flow filed a
5  supplemental complaint with a counterclaim alleging infringement of this patent on February 14,
6  2006.

### III.  Discussion

**A.   Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" and a fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The evidence is viewed in the light most favorable to the non-moving party. Id.

**B.   Non-Disclosure of Litigation**

Federal regulations impose on all patent applicants a duty of candor, good faith and honesty. 37 C.F.R. § 1.56. The Manual of Patent Examining and Procedures ("MPEP") has interpreted this requirement to include all litigation: "Where the subject matter for which a patent is being sought is or has been involved in litigation, the existence of such litigation and any other material information arising therefrom must be brought to the attention of the U.S. Patent and Trademark Office." MPEP § 2001.06(c). Omax argues that Flow was obligated to inform the USPTO of litigation involving the '216 patent when seeking a continuation patent thereof.

ORDER ON MOTIONS FOR
UNENFORCEABILITY BASED ON                    3
NON-DISCLOSURE AND
MISREPRESENTATIONS

Inequitable conduct requires the invalidation of a patent. This Court may find inequitable conduct where there is a "failure to disclose material information . . . coupled with an intent to deceive." <u>Molins PLC v. Textron, Inc.</u>, 48 F.3d 1172, 1178 (Fed. Cir. 1995). Both elements, materiality and intent, must be shown by clear and convincing evidence. <u>Hoffmann-La Roche, Inc. v. Promega Corp.</u>, 323 F.3d 1354, 1359 (Fed. Cir. 2003). Thus, Omax must show by "clear and convincing evidence" that Flow's patent attorney, Ellen Bierman, failed to disclose the existence of this litigation during the examination of the '452 patent because she sought to deceive the USPTO as to the validity of the '216 patent.

Although Omax is correct that it is rare for a court to find a "smoking gun" to show an intent to deceive, it is also very unusual for a court to invade the province of the jury by addressing factual disputes related to an attorney's intent to deceive. Resolving all legitimate factual disputes in favor of Flow, the Court finds it highly plausible that Bierman concluded that the Clerk of Court's notification to the USPTO about the '216 patent was sufficient to make the patent examiner aware of patent disputes regarding the subject matter of the '452 patent and that she was unaware of her independent duty under MPEP § 2001.06(c). Summary judgment is therefore inappropriate.[2]

## C.     Misrepresentations

Bierman avers that she submitted the supplemental IDS for the purpose of informing the USPTO about two items of prior art that had come to her attention through another action. Declaration of Ellen Bierman at ¶ 20 ("Bierman Decl.") (Dkt. #136). These items are referenced in the form as AA and AD. She had been previously unaware of these references, despite her reasonable efforts to become aware of relevant prior art. The form includes a statement pursuant

---

[2] Omax should be mindful that not every argument that <u>can</u> be asserted <u>must</u> be asserted at trial, especially where counsel are accusing members of the bar of intentionally deceiving a government agency.

ORDER ON MOTIONS FOR
UNENFORCEABILITY BASED ON                              4
NON-DISCLOSURE AND
MISREPRESENTATIONS

to a federal regulation which allows the patent attorney to submit the supplemental IDS without the accompanying fee when:

> no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in § 1.56(c) more than three months prior to the filing of the information disclosure statement.

37 C.F.R. § 1.97(e)(2). Bierman made this certification, which was undisputedly true as to two of the items included.

Bierman explains that she also included other facts on the same IDS for the purpose of convenience. This was done in order "to make sure that the USPTO file history for the '452 application was up to date on publication numbers and issued patent numbers for applications that had been referred to in the specification (and later-filed related applications)." Bierman Decl. ¶ 21. This information included one patent application that is referenced in the '452 patent, application number 09/940,689 (item AB in the IDS). Also included in the IDS was its continuation application, number 10/114,920, and the divisional application of that patent, number 10/717/744 (items AC and AE in the IDS). Finally, Bierman also included the number for the parent patent of the '452 patent itself, the '216 patent (item AF in the IDS). Bierman concedes that this final inclusion was neither necessary nor helpful, but maintains that providing the remaining three numbers assisted the administrative process of the patent application by providing the examiner with the updated identifying numbers for several of the references.

Omax now seeks to invalidate the '452 patent because the 37 C.F.R. § 1.97(e)(2) phrase, quoted above, does not apply to items AB, AC, AE and AF of the supplemental IDS. These references were, in fact, known to Bierman prior to three months before the filing of the IDS. Indeed, they were referenced in the '452 patent specification itself. Moreover, the practice of using this subsection to avoid a fee is explicitly forbidden by the MPEP where, as here, the

ORDER ON MOTIONS FOR
UNENFORCEABILITY BASED ON                5
NON-DISCLOSURE AND
MISREPRESENTATIONS

"inventor of the U.S. application is also a named inventor of one of the items of information contained in the IDS." MPEP § 609.04(b). Nonetheless, the statement incorrectly asserted that even though it was more than three months after the filing date, the fee required by 37 C.F.R. § 1.97(c)(2) and 37 C.F.R. § 1.17(P) ($180) was unnecessary pursuant to 37 C.F.R. § 1.97(c)(1) and (e)(2). However, the statement also authorized the examiner to withdraw money if he independently determined that a fee was required. He did not. Upon learning of this motion, Flow sent the fee, just to be sure.

A patent may be found invalid if a patentee perpetrates "an affirmative misrepresentation of a material fact . . . coupled with an intent to deceive." Molins, 48 F.3d at 1178. Omax's current motion for invalidity argues that any false statement is material if it induces favorable treatment by the USPTO. See Gen. Electro Music Corp. v. Samick Music Corp., 19 F.3d 1405, 1411 (Fed. Cir. 1994) ("We conclude as a matter of law that a false statement in a petition to make special is material if, as in the case here, it succeeds in prompting expedited consideration of the application."). Thus, Omax's argument is that because Flow induced the USPTO to waive the $180 fee, it intentionally made a false, material statement.

Flow argues that it received no benefit from this false statement other than initially avoiding the $180 fee, which it later paid. Omax does not dispute this. In fact, Omax suggests that Flow could have avoided the fee for all of the information submitted in the supplemental IDS *and* avoided Omax's instant motion for invalidity by simply re-wording its (e)(2) declaration. See Reply at 4–5. Nonetheless, Omax argues that there cannot be a *de minimis* exception to the rules of patent examination. Notwithstanding the fact that Flow's statement is better understood as simply an "irregular" use of a USPTO form, rather than a situation where a misrepresentation is conveyed purposefully, Omax argues that the Court must invalidate the patent.

Patent invalidation is an extreme measure, the use of which is committed to the discretion of this Court. Halliburton Co. v. Schlumberger Tech. Corp., 925 F.2d 1435, 1439–40 (Fed. Cir. 1991). At this stage in the proceedings, Omax must show that there is no genuine issue of material fact that Flow intentionally misrepresented material facts to the USPTO, and that this act rises to the level of inequitable conduct, rendering the patent unenforceable. The Court concludes that it need not decide whether Omax could show materiality and intent, because even if it could, no reasonable factfinder could conclude that "the applicant's conduct is so culpable that the patent should not be enforced." Molins, 48 F.3d at 1178. This threshold has been described as "whether there is a substantial likelihood that a reasonable examiner would have considered the omitted reference or false information important in deciding whether to allow the application to issue as a patent." J.P. Stevens & Co., Inc. v. Lex Tex Ltd., Inc., 747 F.2d 1553, 1559 (Fed. Cir. 1984). Although the patent process benefits from its participants' strict adherence to the rules, invalidation is far too severe a penalty for the trifling oversight committed in the supplemental IDS. Thus, Omax's summary judgment motion for invalidity based on misrepresentations to the patent office must be denied.

Where the facts merit, this Court may grant summary judgment to a non-moving party. Cool Fuel, Inc. v. Connett, 685 F.2d 309, 311 (9th Cir. 1982). Because it is clear that the uncontested facts, even viewed in a light most favorable to Omax, could not show inequitable conduct by Flow, this Court will grant summary judgment in favor of Flow on this matter. On the question of misrepresentations in the supplemental IDS, Omax is precluded from further arguing for invalidation of the '452 patent.

UNENFORCEABILITY BASED ON            7
NON-DISCLOSURE AND
MISREPRESENTATIONS

### IV. Conclusion

For all of the foregoing reasons, Omax's motions for invalidation (Dkt. ## 93 & 96) are DENIED.

DATED this 7th day of November, 2006.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER ON MOTIONS FOR
UNENFORCEABILITY BASED ON
NON-DISCLOSURE AND
MISREPRESENTATIONS

8