1

2

3

4

5

6

Honorable Robert S. Lasnik

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10

OMAX CORPORATION,
a Washington corporation,

Case Number: CV 04-2334

11

Plaintiff,

MOTION TO COMPEL DISCOVERY
AND/OR FOR IN CAMERA
INSPECTION OF DOCUMENTS
RELATED TO FLOW'S LACHES
DEFENSE

12

v.

13

14

FLOW INTERNATIONAL
CORPORATION, a Washington
corporation,

**Note for hearing:  June 8, 2007**

15

Defendant.

# **FILED UNDER SEAL**

16

FLOW INTERNATIONAL
CORPORATION, a Washington
corporation,

17

18

Counterclaimant,

19

v.

20

OMAX CORPORATION,
A Washington corporation

21

22

Counterclaim Defendant.

23

24

25

26

MOTION TO COMPEL DISCOVERY AND/OR
FOR IN CAMERA INSPECTION OF DOCUMENTS
RELATED TO FLOW'S LACHES DEFENSE
**Case No. CV 04-2334**

ANDRUS, SCEALES, STARKE & SAWALL, LLP
100 EAST WISCONSIN AVENUE
SUITE 1100
MILWAUKEE, WISCONSIN 53202-4178
TELEPHONE (414) 271-7590
FACSIMILE (414) 271-5770

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE (206) 623-7580
FACSIMILE (206) 623-7022

I   PRELIMINARY STATEMENT

In its order denying Flow's motion to compel discovery related to its laches, estoppel and waiver defenses (Dkt #259), the Court observed that OMAX had provided Flow with an updated privilege log which appeared to have addressed at least in part, Flow's concerns over the specificity of the previous logs, and narrowed and focused the dispute over individual documents. The Court asked the parties to meet and confer regarding specific documents in dispute in an attempt to resolve the dispute.

The parties have done as the Court requested, and while the dispute has been narrowed, Flow asks that certain documents described on the privilege log be produced, if necessary, after an *in camera* review of the documents by the Court. The basis for the request is Flow's belief, based on the descriptions in the privilege log and on the applicable authority, that the documents at issue are not privileged.

Most of the documents in dispute consist of communications between OMAX or its counsel and an organization called Litigation Risk Management ("LRM" herein). While LRM apparently had attorneys on staff, it was in fact no more than an insurance broker that assisted patent holders in obtaining "insurance" from underwriters that would advance the costs of patent litigation in exchange for either a

MOTION TO COMPEL DISCOVERY AND/OR
FOR IN CAMERA INSPECTION OF DOCUMENTS
RELATED TO FLOW'S LACHES DEFENSE - 1
**Case No. CV 04-2334**             ANDRUS, SCEALES, STARKE & SAWALL, LLP          KIRKPATRICK & LOCKHART
                                    100 EAST WISCONSIN AVENUE                    PRESTON GATES ELLIS LLP
                                    SUITE 1100                                   925 FOURTH AVENUE
                                    MILWAUKEE, WISCONSIN 53202-4178              SUITE 2900
                                    TELEPHONE (414) 271-7590                     SEATTLE, WASHINGTON 98104-1158
                                    FACSIMILE (414) 271-5770                     TELEPHONE (206) 623-7580
                                                                                 FACSIMILE (206) 623-7022

significant "premium" or a share of the spoils.[1]  Flow asserts that OMAX's communications with LRM were for the purpose of soliciting assistance in obtaining financing for the bringing of a patent infringement action against Flow.

This type of attempted fund-raising is not legal representation, therefore, the communications between OMAX and LRM (and its consultants) are not privileged. Moreover, testimony concerning the discussions between LRM and OMAX is not privileged, and witnesses questioned about those discussions should be permitted to answer questions.

## II.    SIGNIFICANCE OF THE DOCUMENTS

Flow has been promoting and selling the accused FlowMaster software since 1996.  Flow has made no secret of FlowMaster and its functionalities, including the percentage speed input which OMAX characterizes as a "quality" designation.  As early as 1997, OMAX conducted substantial research and analysis of the FlowMaster system (*see*, Doc. #230, pp. 204 and associated exhibits).  Yet OMAX waited until 2003 to accuse Flow of infringement.  Hence Flow has made a claim of laches.

OMAX responds to Flow's laches defense in a number of ways, including the argument that it wasn't sure Flow was infringing until it obtained a copy of Flow's '216 patent application in 2003.  O'Connor Deposition, Vol. 3, pp. 380-381.

---

[1]    At pp. 6 and 7 of Flow's first Motion to Compel re Laches (Dkt # 230), Flow described what it then believed about LRM.  OMAX's Opposition to Flow's Motion (Dkt # 242) did not dispute Flow's conclusions about the nature of LRM's activities.

MOTION TO COMPEL DISCOVERY AND/OR
FOR IN CAMERA INSPECTION OF DOCUMENTS
RELATED TO FLOW'S LACHES DEFENSE - 2
**Case No. CV 04-2334**

ANDRUS, SCEALES, STARKE & SAWALL, LLP
100 EAST WISCONSIN AVENUE
SUITE 1100
MILWAUKEE, WISCONSIN 53202-4178
TELEPHONE (414) 271-7590
FACSIMILE (414) 271-5770

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE (206) 623-7580
FACSIMILE (206) 623-7022

Flow believes that if OMAX had enough information to try to interest LRM in "insuring" or investing in litigation against Flow in 1997 and 1998, it had sufficient information to file suit and thus trigger a laches defense.

## DOCUMENTS IN DISPUTE

An abridged copy of the February 9, 2007 corrected supplemental privilege log supplied by OMAX is appended to this Motion.  The documents in dispute are the following:

| Doc. # | Priv. Log Page No. | Date | Author | Recipient(s) |
|---|---|---|---|---|
| 1 | 4 | 9/2/1997 | J. Olsen | LRM, J. Haley |
| 2 | 5 | 11/11/1997 | AMT Information Resource Center | J. Olsen (OMAX) |
| 3 | 5 | 4/8/1998 | J. Hughes (LRM) | J. Haley; J. O'Connor (OMAX); Mark Schaa; Lovsted; Andrew Marsh (Special Risk Services Underwriting Agency, Ltd., London, UK); C. Carothers (LRM) |
| 4 | 6 | 2/15/1999 | D. Fancher (Deloitte and Touche) | C. Carothers (LRM), cc. J. Haley, R. Goff, J. Olsen, J., O'Connor) |
| 5 | 6 | 2/24/1999 | A. Purbaugh (LRM); J. O'Connor | J. Olsen; J. O'Connor |
| 6 | 7 | 2/25/1999 and 3/3/99 | Kolish Hartwell Dickinson McCormack & Heuser (attorneys, Portland OR) | LRM, cc to J. Haley, R. Goff, J. O'Connor |
| 7 | 7 | 3/10/1999 | K.Birenbaum (LRM) | R. Goff |

MOTION TO COMPEL DISCOVERY AND/OR
FOR IN CAMERA INSPECTION OF DOCUMENTS
RELATED TO FLOW'S LACHES DEFENSE - 3
**Case No. CV 04-2334**

ANDRUS, SCEALES, STARKE & SAWALL, LLP
100 EAST WISCONSIN AVENUE
SUITE 1100
MILWAUKEE, WISCONSIN 53202-4178
TELEPHONE (414) 271-7590
FACSIMILE (414) 271-5770

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE (206) 623-7580
FACSIMILE (206) 623-7022

| 8 | 7 | 3/22/1999 (est.) | Hughes, J. (LRM); C. Carothers (LRM) | J. Haley, R. O'Connor, R. Goff |
|---|---|---|---|---|
| 9 | 8 | 3/22/1999 | C. Carothers (LRM) | Andrew Marsh (Special Risk Services Underwriting Agency, Ltd., London, UK); J. Hughes (LRM), O'Connor, Ned Sander (Acordia Northwest); J. Haley |
| 10 | 8 | 3/24/1999 | R. Goff | J. Hughes (LRM), O'Connor |
| 11 | 8 | 6/25/1999 | J. Hughes (LRM) | R. Goff; J. O'Connor |
| 12 | 9 | 3/20/2000 | J. Hughes (LRM) | R. Goff, J. O'Connor; C. Carothers (LRM) |

All but one of the documents here in dispute are to or from LRM. Several have as authors or copyees individuals or entities from accounting firms (Deloitte Touche, Document 4) or underwriting firms (Special Risk Services Underwriting Agency, Ltd., Doc. 9). Acordia Northwest (Doc. 9) is another underwriter, according to Mr. O'Connor (O'Connor Dep. Vol. 1, p. 125). What the accountants and underwriters were supposedly doing in support of alleged legal services for OMAX was the subject of instructions not to answer. (O'Connor Tr., Vol. 1, p. 122 – Andrew Marsh; Id., pp. 126-127 – Ned Sander). Indeed, counsel for OMAX would not even permit his witness to testify to the dates of meetings between OMAX personnel and LRM:

99

24     "Question:  With respect to Mr. Hughes and
25  Mr. Caruthers, other than the meetings that also

100

MOTION TO COMPEL DISCOVERY AND/OR
FOR IN CAMERA INSPECTION OF DOCUMENTS
RELATED TO FLOW'S LACHES DEFENSE - 4
**Case No. CV 04-2334**

ANDRUS, SCEALES, STARKE & SAWALL, LLP
100 EAST WISCONSIN AVENUE
SUITE 1100
MILWAUKEE, WISCONSIN 53202-4178
TELEPHONE (414) 271-7590
FACSIMILE (414) 271-5770

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE (206) 623-7580
FACSIMILE (206) 623-7022

1  involved the Deloitte & Touche people, have you been in
2  meetings with either or both of them?")
3      A.  Yes.
4      Q.  How many such meetings have you been in?
5      MR. GOFF:  Same stipulation?
6      MR. BINNEY:  Yes.
7      A.  I can't remember the exact number.
8  Probably more than five.
9      Q.  Over what time frame did these meetings
10  occur?
11      MR. GOFF:  Object on the grounds of
12  attorney-client privilege and work product, and
13  instruct the witness not to answer.

(O'Connor Dep. Vol. 1, pp. 99-100)

The only non-LRM document is Doc. 2, from the AMT Information Resource

Center to Dr. John Olsen of OMAX.  James O'Connor provided the following

information about AMT.

117

10      Q.  Have you heard of an organization called
11  the AMT Information Resource Center?
12      A.  Yes, I'm not sure if that's exactly the
13  name, but I think I know what you're referring to.
* * *

118

3      A.  I know what AMT is.  The specifics of the
4  Information Resource Center, I have not, I don't
5  recognize that name per se, I don't know.
6      Q.  So what's AMT?
7      A.  I think it's the American Manufacturing
8  Technology Association, a trade association.  They
9  sponsored some of our trade shows, the industry trade
10  shows.
* * *

16      Q.  Has AMT to your knowledge ever performed
17  legal services for OMAX?
18      MR. GOFF:  Same stipulation?

MOTION TO COMPEL DISCOVERY AND/OR
FOR IN CAMERA INSPECTION OF DOCUMENTS
RELATED TO FLOW'S LACHES DEFENSE - 5

Case No. CV 04-2334        ANDRUS, SCEALES, STARKE & SAWALL, LLP        KIRKPATRICK & LOCKHART
                           100 EAST WISCONSIN AVENUE                     PRESTON GATES ELLIS LLP
                           SUITE 1100                                    925 FOURTH AVENUE
                           MILWAUKEE, WISCONSIN 53202-4178               SUITE 2900
                           TELEPHONE (414) 271-7590                      SEATTLE, WASHINGTON 98104-1158
                           FACSIMILE (414) 271-5770                      TELEPHONE (206) 623-7580
                                                                         FACSIMILE (206) 623-7022

19        MR. BINNEY: Yes.
20        A.  I'm not aware of legal services. I'm
21    aware of government contract relationships, recent.

Neither author nor addressee is a lawyer for OMAX, thus Flow cannot

ascertain why or how this document could be privileged, nor is there any evidence to

support a work product claim.

### III.    LAW AND ARGUMENT

A.    LRM WAS NOT OMAX'S ATTORNEY AND NO PRIVILEGE ATTACHES
       TO THE RELATIONSHIP

Flow's first Motion posed the issue of whether whatever privilege might apply

to these (and other) documents had been waived in light of the laches defense and

OMAX's response to it.  This Motion poses the issue of whether these specific

documents are in fact privileged at all, and, to the extent they are, how far that

privilege extends.

The attorney client privilege extends to communications between lawyer and

client (or between lawyer and prospective client) which relate to the seeking or

providing of legal advice.  *Clarke v. American Commerce National Bank,* 974 F.2d

127, 129 (9th Cir. 1992).  The work product privilege extends to documents or other

evidence prepared in anticipation of litigation.  *Holmgren v. State Farm Mutual

Automobile Insurance Co.,* 976 F.2d 573, 576 (9th Cir. 1992).  The Court needs to

look at the fundamental nature of the relationship between LRM and OMAX.

Unfortunately, the true nature of that relationship will only be apparent from either a

MOTION TO COMPEL DISCOVERY AND/OR
FOR IN CAMERA INSPECTION OF DOCUMENTS
RELATED TO FLOW'S LACHES DEFENSE - 6
Case No. CV 04-2334                    ANDRUS, SCEALES, STARKE & SAWALL, LLP          KIRKPATRICK & LOCKHART
                                       100 EAST WISCONSIN AVENUE                     PRESTON GATES ELLIS LLP
                                       SUITE 1100                                    925 FOURTH AVENUE
                                       MILWAUKEE, WISCONSIN 53202-4178               SUITE 2900
                                       TELEPHONE (414) 271-7590                      SEATTLE, WASHINGTON 98104-1158
                                       FACSIMILE (414) 271-5770                      TELEPHONE (206) 623-7580
                                                                                     FACSIMILE (206) 623-7022

review of the documents themselves (a review that OMAX has blocked) or from questioning of witnesses with knowledge (also blocked by OMAX).[2] Thus the specifics of what OMAX sought from LRM, and what LRM provided to OMAX remain hidden from Flow.

Flow does, however, have some information about LRM, both from the public record, as recounted in Flow's original Motion, and from a 2003 California District Court case involving some similar issues. In *Jumpsport, Inc. v. Jumpking, Inc.*, 312 F.R.D. 329 (N.D. Cal. 2003), a plaintiff inadvertently produced a report prepared on behalf of LRM. The Court described LRM itself as a company "...which specializes in preparing the materials necessary to complete an application" for "'patent enforcement' or 'patent pursuit' insurance coverage" (*Id.,* at 331-332). The Court went on to describe the application process, including the requirement that the plaintiff commission a report by Deloitte Touche (also featured on OMAX's privilege log) on the value of the applicant's company and of its intellectual property (*Id.* at 332). LRM also apparently required a separate independent legal analysis of the applicant's patent rights by a lawyer with expertise in intellectual property (*Id.*)

The District Court in *Jumpsport* concluded that the inadvertently produced report itself (prepared by Deloitte Touche) would not be protected by the attorney

---

[2] The Declaration of David H. Binney collects instructions not to answer in connection with the examination of James O'Connor, OMAX's CFO, also discussed below

MOTION TO COMPEL DISCOVERY AND/OR
FOR IN CAMERA INSPECTION OF DOCUMENTS
RELATED TO FLOW'S LACHES DEFENSE - 7

**Case No. CV 04-2334**

ANDRUS, SCEALES, STARKE & SAWALL, LLP
100 EAST WISCONSIN AVENUE
SUITE 1100
MILWAUKEE, WISCONSIN 53202-4178
TELEPHONE (414) 271-7590
FACSIMILE (414) 271-5770

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE (206) 623-7580
FACSIMILE (206) 623-7022

work product doctrine.  The Court did not discuss whether an application for "patent infringement insurance" would in and of itself be protected from discovery.

One thing is clear:  if, as it appears from the public record and the description of LRM's role from the *Jumpsport* case, LRM was in essence an insurance broker specializing in assisting companies in applying for "patent infringement insurance", then LRM was not OMAX's lawyer.  No attorney-client privilege would apply, even if certain employees of LRM were lawyers.  A similar conclusion was reached in *Go Medical Industry PTY, Ltd. et al v. C.R. Bard, Inc.*, 1998 U.S. Dist. LEXIS 22919 at *9 (copy attached), where documents submitted in support of a claim for patent litigation expenses under a "patent infringement" insurance policy were sought.  The plaintiff there argued that the privilege would extend to the insurance company under the "common interest" doctrine[3]; the court held that the interests of the plaintiff and its patent insurance company were not sufficiently compatible for the common interest rule to apply.

B.    IF THE WORK PRODUCT EXEMPTION IS NOT WAIVED, THEN THE SCOPE OF ITS PROTECTION IS NARROW

OMAX has asserted the work product exemption as to each of the disputed documents.  Flow previously argued that the work product exemption was waived, an argument the Court rejected.  Flow renews that argument here as to the disputed

---

[3]  Under the common interest rule, parties and counsel involved in a joint defense or enterprise may disclose privileged information to each other without destroying the privileged nature of those communications.  *Griffith v. Davis*, 161 F.R.D.687, 692 (C.D. Cal. 1995); *U.S. v. Schwimmer*, 892 F.2sd 234, 243 (2nd Cir. 1989).  Flow will respond further on this point if OMAX asserts a common interest theory in opposition to this motion.

MOTION TO COMPEL DISCOVERY AND/OR
FOR IN CAMERA INSPECTION OF DOCUMENTS
RELATED TO FLOW'S LACHES DEFENSE - 8
Case No. CV 04-2334

ANDRUS, SCEALES, STARKE & SAWALL, LLP
100 EAST WISCONSIN AVENUE
SUITE 1100
MILWAUKEE, WISCONSIN 53202-4178
TELEPHONE (414) 271-7590
FACSIMILE (414) 271-5770

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE (206) 623-7580
FACSIMILE (206) 623-7022

1  documents based on their disclosure to at least one third party (LRM) that was not

2  OMAX's attorney.

3      If the Court determines that the work product exemption nevertheless applies

4  to some or all of the documents in dispute, Flow nevertheless urges the Court to

5  require production of the documents with whatever portions that are in fact work

6

7  product excised or redacted.  The redacted portions should be limited to actual legal

8  analysis or advice sought or obtained by OMAX.  The analysis by the District Court

9  in *Jumpsport* (supra. at 353) offers guidance on this point.

10

11      Given the content of the report, would a refusal to extend protection to this
       document invade that "zone of privacy" that courts have assumed that lawyers
12     and clients need if they are to think reliably, critically, and creatively about
       their litigation?  Because the document reveals no legal reasoning and no
13     thoughts about what might occur in litigation or how litigation might be
       handled, the answer is [that the work product exemption would not apply].

14

15      Plainly, OMAX's own analysis in 1997 and 1998 of the facts supporting its

16  infringement claims against Flow would be highly relevant to Flow's laches defense.

17  If the Court decides that documents at issue contain material that is properly

18  designated as work product or otherwise privileged, and that any privilege applicable

19

20  to that material has not been waived, then the other portions of these documents – the

21  descriptions of the application itself, whatever descriptions are included of what the

22  various third parties will be doing, any non-legal analysis, underlying factual

23  statements by participants – should be discoverable.  Flow is entitled to evidence that,

24

25  as of the dates of these documents, OMAX was actively pursuing a method of

26

ANDRUS, SCEALES, STARKE & SAWALL, LLP
100 EAST WISCONSIN AVENUE
SUITE 1100
MILWAUKEE, WISCONSIN 53202-4178
TELEPHONE (414) 271-7590
FACSIMILE (414) 271-5770

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE (206) 623-7580
FACSIMILE (206) 623-7022

financing the bringing of its patent claims against Flow – evidence that has to date been blocked by assertions of the attorney-client and work product privileges.

C.    INSTRUCTIONS NOT TO ANSWER QUESTIONS ABOUT LRM WERE IMPROPER

Consistent with the above discussion, numerous objections and instructions not to answer during deposition were improper. The following table cites to the record of the O'Connor deposition in particular and summarizes the information that the witness was prevented from providing.

| Page and line range | Information sought |
|---|---|
| 87:4 – 87:15 | Timing of meeting by O'Connor with Fancher (Deloitte & Touche) |
| 92:19 – 92:24 | Substance of discussions at meeting with Fancher and Purbaugh (identified as either Deloitte or LRM) |
| 95:5 – 95:10 | Whether either Fancher or Purbaugh have ever performed legal services for OMAX |
| 95:13 – 95:19 | Subject matter of written communications between OMAX and Deloitte & Touche |
| 96:14 – 96:18; 97:10 – 97:14 | Witness' understanding of what LRM's business is. |
| 98:5 – 98:13 | Nature of legal services allegedly performed by LRM for OMAX; whether alleged legal services were related OMAX's claims for patent infringement against Flow. |
| 98:14 – 98:18 | Whether LRM was in the business of investing in patent litigation |
| 99:24 – 100:13 | Time frame of meetings between OMAX and LRM |
| 108:13 – 108:19 | Time frame during which LRM allegedly provided legal services to OMAX or its counsel. |
| 111:6 – 111:9 | Time frame during which Kolish law firm[4] allegedly performed legal services for OMAX |

---

[4]  If LRM's procedures with OMAX were similar to what was described in *Jumpsport*, supra, the Kolish firm may have been selected by LRM and retained by OMAX to provide an independent evaluation of OMAX's

MOTION TO COMPEL DISCOVERY AND/OR
FOR IN CAMERA INSPECTION OF DOCUMENTS
RELATED TO FLOW'S LACHES DEFENSE - 10
Case No. CV 04-2334

ANDRUS, SCEALES, STARKE & SAWALL, LLP
100 EAST WISCONSIN AVENUE
SUITE 1100
MILWAUKEE, WISCONSIN 53202-4178
TELEPHONE (414) 271-7590
FACSIMILE (414) 271-5770

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE (206) 623-7580
FACSIMILE (206) 623-7022

| 111:12 – 112:3 | Form of communication seen by witness from Kolish law firm (letter, memo, email…) |
|---|---|
| 114:8 – 114:14 | Substance of communications from Kolish law firm. |
| 122:5 – 122:15 | Nature of business conducted by Andrew Marsh (Special Risk Services) |
| 125:22 – 126:14 | Whether alleged legal services provided by Sander (Acordia NW) were related to litigation against Flow. |
| 126:8 – 126:12 | Nature of alleged legal services provided by Sander (Acordia NW) to OMAX or its counsel |
| 126:19 – 126:23 | Time frame over which Sander allegedly performed legal services for OMAX or its counsel |
| 409:14 – 409:23 | Whether OMAX was seeking or able to obtain financing to bring a lawsuit against Flow in the 1998-1999 timeframe. |

## IV.    CONCLUSION

LRM was an insurance broker; Deloitte & Touche is an accounting firm. Special Risk Services and Acordia NW apparently were or are underwriters of some kind.  None of these entities were OMAX's lawyers.  Communications between these entities and OMAX are not privileged.  To the extent that work product was provided to these entities, OMAX waived the work product exemption.  Even if work product is deemed to apply here, Flow is entitled to any portions of the documents in question that are not work product.  Flow requests favorable consideration that the requested documents be produced and that OMAX's witnesses be compelled to answer the outstanding deposition inquiries.

//

//

claims against Flow.  Even if the substance of that evaluation is work product, the fact that it occurred is not, and because the evaluation went to LRM, it is not privileged.

MOTION TO COMPEL DISCOVERY AND/OR
FOR IN CAMERA INSPECTION OF DOCUMENTS
RELATED TO FLOW'S LACHES DEFENSE - 11
Case No. CV 04-2334

ANDRUS, SCEALES, STARKE & SAWALL, LLP
100 EAST WISCONSIN AVENUE
SUITE 1100
MILWAUKEE, WISCONSIN 53202-4178
TELEPHONE (414) 271-7590
FACSIMILE (414) 271-5770

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE (206) 623-7580
FACSIMILE (206) 623-7022

1    DATED this 23rd day of May, 2007.

2

3    By s/  George H. Solveson                    By s/   David H. Binney
          George H. Solveson                           David H. Binney, WSBA #07576

4         Aaron T. Olejniczak                     Attorneys for Defendant/Counterclaimant
     Attorneys for Defendant/Counterclaimant      FLOW INTERNATIONAL CORPORATION

5    FLOW INTERNATIONAL CORPORATION               Kirkpatrick & Lockhart
     Andrus, Sceales, Starke & Sawall, LLP        Preston Gates Ellis LLP

6    100 East Wisconsin Avenue, Suite 1100        925 Fourth Avenue, Suite 2900
     Milwaukee, WI 53202                          Seattle, WA 98104-1158

7    Telephone: (414) 271-7590                    Telephone: (206) 623-7580
     Facsimile: (414) 271-5770                    Facsimile: (206) 623-7022

8    E-Mail: georges@andruslaw.com                E-Mail: david.binney@klgates.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MOTION TO COMPEL DISCOVERY AND/OR
FOR IN CAMERA INSPECTION OF DOCUMENTS
RELATED TO FLOW'S LACHES DEFENSE - 12
**Case No. CV 04-2334**              ANDRUS, SCEALES, STARKE & SAWALL, LLP          KIRKPATRICK & LOCKHART
                                     100 EAST WISCONSIN AVENUE                     PRESTON GATES ELLIS LLP
                                     SUITE 1100                                    925 FOURTH AVENUE
                                     MILWAUKEE, WISCONSIN 53202-4178               SUITE 2900
                                     TELEPHONE (414) 271-7590                      SEATTLE, WASHINGTON 98104-1158
                                     FACSIMILE (414) 271-5770                      TELEPHONE (206) 623-7580
                                                                                   FACSIMILE (206) 623-7022

1

2

## CERTIFICATE OF SERVICE

3      I hereby certify that on the 23rd day of May 2007, I electronically filed the foregoing

4   with the Clerk of the Court using CM/ECF system which will send notification of such filing
    to all counsel of record.

5                                      /s/ Judy Goldfarb

6                                      Judy Goldfarb, Assistant to
                                       David H. Binney
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MOTION TO COMPEL DISCOVERY AND/OR
FOR IN CAMERA INSPECTION OF DOCUMENTS
RELATED TO FLOW'S LACHES DEFENSE - 13
**Case No. CV 04-2334**

ANDRUS, SCEALES, STARKE & SAWALL, LLP
100 EAST WISCONSIN AVENUE
SUITE 1100
MILWAUKEE, WISCONSIN 53202-4178
TELEPHONE (414) 271-7590
FACSIMILE (414) 271-5770

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE (206) 623-7580
FACSIMILE (206) 623-7022

# APPENDIX A

# OMAX SUPPLEMENTAL PRIVILEGE LOG
### January 12, 2007 – with Revisions and Corrections, February 9, 2007

### OMAX CORPORATION V. FLOW INTERNATIONAL CORPORATION
### W.D. WA No. CV 04-2334

|  |  |  |  | attached application showing allowed claim, and with legal advice |
|---|---|---|---|---|
| J. Haley | 4/26/96 | J. Olsen | AC | Ltr re legal advice re patent |
| J. Johnson | 5/10/96 | J. Olsen J. Cheung, OMAX J. O'Connor, OMAX | AC | Ltr re: patent prosecution (with handwritten notes from J. Olsen to J. Cheung and J. O'Connor re information requested by counsel) |
| J. Johnson | 6/21/96 | J. Olsen Jeff Haley | AC | Ltr re: patent prosecution |
| J. Haley | 7/16/96 | J. Olsen | AC | Ltr. re: patent prosecution, with legal advice |
| Stephen Evans, Attorney, Graybeal, Jackson & Haley (S. Evans) | 12/9/96 | J. Olsen J. Haley | AC | Ltr re: legal advice re patent. |
| Rockie Ward, Omax (R. Ward) | 2/4/97 | J. Haley S. McClain, OMAX | AC | Ltr. re: information for review and advice by counsel re patent prosecution. |
| S. Evans | 2/20/97 | J. Olsen | AC | Ltr: legal advice re OMAX patent |
| J. Olsen Carl Olsen, Omax (C. Olsen) | 6/17/97 | (J. Haley) | AC | Draft of invention disclosure for review by attorney |
| J. Olsen | 9/2/97 | Litigation Risk Management ("LRM") (J. Haley) | AC WP | Document prepared and sent at direction of attorney, with information for legal advice and assistance from firm (whose principals were attorneys) engaged by |



# OMAX SUPPLEMENTAL PRIVILEGE LOG
### January 12, 2007 – with Revisions and Corrections, February 9, 2007

## OMAX CORPORATION V. FLOW INTERNATIONAL CORPORATION
### W.D. WA No. CV 04-2334

| | | | | |
|---|---|---|---|---|
| | | | | attorney to provide same and to assist such attorney's legal advice and assistance,. |
| J. Haley | 10/13/97 | J. O'Connor S. Evans | AC  WP | Memo: legal advice and assistance re potential enforcement of OMAX patents. |
| AMT Information Resource Center | 11/11/97 | J. Olsen | AC  WP | Information from firm engaged, at direction of legal counsel, re information for counsel's legal advice and assistance re potential enforcement of OMAX patents. |
| Circa 1997 | J. Haley | | AC WP | Attorney notes on copies of references, for legal advice re potential enforcement of OMAX patents |
| Joby Hughes (attorney), LRM | 4/8/98 | J. Haley Cc: J. O'Connor; Mark Schaa, Lovsted; Andrew Marsh, Special Risk Services Underwriting Agency, Ltd., London, UK; C. Carothers (attorney), LRM. | AC WP | Engagement letter/agreements between J. Haley, Graybeal Jackson Haley and J. Hughes, LRM, re legal advice, and assistance for J. Haley's legal advice and assistance, re potential enforcement of OMAX patents, with copies to persons to whom disclosure reasonably necessary for rendition of such legal services. |
| Esme Bauxar, secretary to J. Haley | 4/14/98 | R. Ward | AC | Ltr re document dated 5/20/03 (see above) |
| George Blat | 4/24/98 | J. Olsen, Carl | AC | Invention Disclosure |



# OMAX SUPPLEMENTAL PRIVILEGE LOG
### January 12, 2007 – with Revisions and Corrections, February 9, 2007

## OMAX CORPORATION V. FLOW INTERNATIONAL CORPORATION
### W.D. WA No. CV 04-2334

|  |  | Olsen (disclosees)<br>(J. Haley |  | for review by attorney |
|---|---|---|---|---|
| S. Evans | 5/18/98 | J. Olsen<br>cc. J. Haley; | AC | Ltr re legal issue re Flow patents |
| S. Evans | 6/19/98 | J. Olsen<br>cc: J. Haley, R. Ward | AC | Letter and attached list, re Flow patents |
| S. Evans | 6/22/98 | J. Olsen | AC | Fax re 6/19 ltr. (see above). |
| S. Evans | 7/14/98 | J. Olsen<br>Cc: R. Ward<br>J. Haley | AC | Ltr re: patent prosecution |
| J. Haley | 1/22/99 | J. Olsen | AC | Ltr with legal advice re patent prosecution |
| J. Haley | 2/12/99 | Smith Bunday Berman Britton, PS<br>cc. J. O'Connor | AC WP | Letter and report re audit of OMAX – re attorney representation on and status of intellectual property matters. |
| ④ Donald Fancher, Deloitte and Touche | 2/15/99 | Craig Carothers, LRM<br>(J. Haley; Richard L. Goff, attorney, Heller, Ehrman, White & McAuliffe); J.Olsen; J. O'Connor) | AC WP | Letter and report re legal advice, and evaluation and information to assist counsel's legal advice and assistance re OMAX patents, from firm engaged by counsel to provide such evaluation, information and, assistance. |
| ⑤ Alison Purbaugh,. LRM<br><br>J. O'Connor | 2/24/99 | J. Olsen<br>J. O'Connor | AC WP | Fax transmitting 2/15 99 document (see above), and copy of that document, with handwritten notes by J. O'Connor for discussion with counsel. |

## OMAX SUPPLEMENTAL PRIVILEGE LOG
### January 12, 2007 – with Revisions and Corrections, February 9, 2007

### OMAX CORPORATION V. FLOW INTERNATIONAL CORPORATION
### W.D. WA No. CV 04-2334

| | | | | | |
|---|---|---|---|---|---|
| ⑥ Kolisch Hartwell Dickinson, McCormack & Heuser (attorneys), Portland, Oregon | 2/25/99 and 3/3/99 | LRM (J. Haley) (R.Goff) (J. O'Connor) | | AC WP | Letter re legal advice re potential enforcement of OMAX patents |
| ⑦ Kate Birenbaum (attorney) LRM | 3/10/99 | R. Goff | | AC WP | Letter and draft documents requested by counsel to assist counsel in rendering legal advice and assistance re potential enforcement of OMAX patents, from firm engaged by counsel to provide such assistance. |
| R. Goff | 3/10/99 | J. O'Connor | | AC WP | E-mail re legal advice re potential enforcement of OMAX patents. |
| J. Haley | 3/17/99 | J. O'Connor | | AC | Ltr. re: status report of Omax patents |
| ⑧ J. Hughes; Craig Carothers attorney, LRM | 3/22/99 (estimated) | (J. Haley) (J. O'Connor) (R. Goff) | | AC WP | Report re legal advice and evaluation re potential enforcement of OMAX patents, from persons engaged by counsel to provide such advice and evaluation to OMAX and to assist such counsel's providing of legal advice and assistance to OMAX. |

# OMAX SUPPLEMENTAL PRIVILEGE LOG
### January 12, 2007 – with Revisions and Corrections, February 9, 2007

## OMAX CORPORATION V. FLOW INTERNATIONAL CORPORATION
### W.D. WA No. CV 04-2334

| | | | | |
|---|---|---|---|---|
| Craig Carothers, LRM | 3/22/99 | Andrew C. Marsh,; cc. J. Hughes, J. O'Connor (w/o enclosures); Ned Sander, Acordia, Northwest) (1 attached page only). (J. Haley) | AC   WP | Letter re potential enforcement of OMAX patents, and certain enclosures referenced above: the Report from J. Hughes and C. Carothers (est. 3/22/99); the letter from Kolisch, Hartwell et al. (3/3/99); the letter and report from D. Fancher, DeLoitte and Touche (2/15/99); the engagement letter/agreements between J. Haley and J. Hughes (4/8/98); and the document from J. Olsen dated 9/2/97. Messrs. Marsh and Sander were persons to whom disclosure was reasonably necessary to and in furtherance of rendition of legal advice and services to client. |
| R. Goff | 3/24/99 | Joby Hughes (J. O'Conner) | AC WP | Letter re potential enforcement of OMAX patents and reflecting legal advice and services to client. |
| J. Haley | 4/19/99 | J. O'Connor | AC | Ltr re: legal advice re patent |
| Joby Hughes | 6/25/99 | R. Goff cc: J. O'Connor | AC WP | Letter transmitting copy of report from J. Hughes and C. Carothers (est. date 3/22/99) referenced above. |
| S. Evans | 10/21/99 | J. Olsen | AC | Ltr with legal advice re OMAX patent. |

⑨  ⑩  ⑪

# OMAX SUPPLEMENTAL PRIVILEGE LOG
## January 12, 2007 – with Revisions and Corrections, February 9, 2007

### OMAX CORPORATION V. FLOW INTERNATIONAL CORPORATION
### W.D. WA No. CV 04-2334



| | | | | |
|---|---|---|---|---|
| R. Goff | 10/21/99 | J. O'Connor (Jeff Haley) | AC  WP | Email re potential enforcement of OMAX patents |
| Richard Goff, Attorney, Heller Ehrman (R. Goff) | 12/21/99 | J. O'Connor | AC  WP | E-mail re: potential enforcement of OMAX patents |
| Joby Hughes | 3/20/00 | R.Goff cc.  J O'Connor; Craig Carothers | AC  WP | Letter re potential enforcement of OMAX patents, and enclosing copy of above referenced letter from C. Carothers, 3/22/99, and attachments thereto. |
| J. Olsen C. Olsen | 4/3/00 | Dan Strong, OMAX; J. Zeng, OMAX (disclosees)  (J. Haley) | AC | Invention disclosure for review by attorney |
| Jiyue Zeng | 12/6/00 | Carl Olsen, J. Olsen (disclosees) (Jeff Haley) | AC | Invention disclosure for review by attorney |
| Jiyue Zeng C. Olsen | 6/20/02 | Dan Strong, J. Olsen (discloses) (Jeff Haley) | AC | Invention disclosure for review by attorney |
| C. Olsen | 6/20/02 | | AC | Draft invention disclosure for review by attorney |
| J. Haley | 8/28/02 | J. Olsen | | Letter re legal advice re OMAX patent |
| J. Haley | 8/11/03 | (OMAX) | AC  WP | Draft letter for discussion with client, with notations re such discussion |
| J. Haley | 10/8/03 | (OMAX) | AC  WP | Draft letter re Flow patent and OMAX patent, with redlined comments and proposed changes. |

# APPENDIX B

Source: **Combined Source Set 5** ⚙ **- 7th Circuit - US District Court Cases; 2nd Circuit - US District Court Case...**
Terms: **privilege! and waive! and "insurance coverage" w/p patent!**  (Edit Search | Suggest Terms for My Search)

⤵Select for FOCUS™ or Delivery
☐

*1998 U.S. Dist. LEXIS 22919, \**

GO MEDICAL INDUSTRIES PTY, LTD., A.C.N. 009 018 339, GO MEDICAL USA, INC., and
ALEXANDER G. B. O'NEIL, Plaintiffs, v. C. R. BARD, INC., Defendant.

MISC DOCKET NO. 3:95 MC 522 (DJS)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

1998 U.S. Dist. LEXIS 22919

August 14, 1998, Decided
August 14, 1998, Filed

**PRIOR HISTORY: [\*1]** United States District Court, Northern District of Georgia. Pendent
Case No. 1:95-CV-2307-HTW.

**DISPOSITION:** Go Medical's motion for protective order (doc. # 1) granted in part and
denied in part and C.R. Bard's cross-motion for order compelling discovery (doc. # 4)
granted in part and denied in part.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff **patent** holder brought a **patent** infringement action
against defendant **patent** infringer in the United States District Court, Northern District of
Georgia. **Patent** holder sought a protective order prohibiting disclosure of certain
documents in the possession of **patent** holder's insurer after **patent** infringer served a
subpoena duces tecum on **patent** holder's insurer. **Patent** infringer sought to compel the
disclosure of those documents.

**OVERVIEW:** Patient holder argued that the documents **patent** infringer had requested,
documents **patent** holder had provided to its insurer regarding **insurance coverage** for
**patent** holder's **patent** infringement action, were protected by the attorney-client
**privilege** and the work product doctrine. The court found that the common interest rule of
the attorney-client **privilege** was not applicable because **patent** holder's interest was in
protecting its **patent** while **patent** holder's insurer's had no interest in the **patent.** The
court found that the documents that had been prepared in anticipation of litigation were
protected by the work product doctrine, but that those that had not been prepared in
anticipation of litigation, were not protected. The court determined that the documents
protected by the work product doctrine were opinion work product and therefore deserved
the highest degree of protection. The court found that with respect to those documents,
the **patent** infringer did not established the highly persuasive showing required for
disclosure of attorney opinion work product, and, therefore, disclosure was not compelled.

**OUTCOME:** The court granted **patent** holder's motion for protective order in part and
denied it in part and granted **patent** infringer's cross-motion for an order compelling
discovery in part and denied it in part.

**CORE TERMS:** work product, disclosure, work product doctrine, common interest, patent,

attorney-client, log, insurer, discovery, insurance policy, infringement, insured, waived, responsive, subpoena, authorization, coverage, patent infringement, impressions, lawsuit, claim of privilege, protective order, anticipation of litigation, legal advice, cross-motion, work product privilege, protection afforded, litigation expense, insurance claim, undue hardship

**LexisNexis(R) Headnotes ✦ <u>Show Headnotes</u>**

**COUNSEL:** For GO MEDICAL INDUSTRIES PTY. LTD., A.C.N. 009 018 339, GO MED USA, INC, ALEXANDER G.B. O'NEIL, Plaintiffs: James E. Alix, L. James Ristas, Alix, Yale & Ristas, Hartford, CT.

For GO MEDICAL INDUSTRIES PTY. LTD., A.C.N. 009 018 339, GO MED USA, INC, ALEXANDER G.B. O'NEIL, plaintiffs: B.J. Powell, Law Offices of B.J. Powell, Atlanta, GA.

For C.R. BARD, INC, defendant: Ian E. Bjorkman, Wiggin & Dana, New Haven, CT.

For C.R. BARD, INC, defendant: Thomas L. Casagrande, Arnold, White & Durkee, Houston, TX.

For C.R. BARD, INC, defendant: Steven F. Meyer, Morgan & Finnegan, New York, NY.

**JUDGES:** DONNA F. MARTINEZ, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** DONNA F. MARTINEZ

**OPINION:** RULING ON MOTION FOR PROTECTIVE ORDER AND CROSS-MOTION FOR ORDER COMPELLING DISCOVERY

This discovery dispute concerns the attorney-client **privilege** and the work product doctrine in the context of **insurance coverage [*2]** for **patent** enforcement litigation expenses. Currently pending before the court is the plaintiffs' motion for protective order and the defendant's cross-motion for order compelling discovery. For the reasons stated below, the motion for protective order (doc. # 1) is granted in part and denied in part and the cross-motion for order compelling discovery (doc. # 4) is granted in part and denied in part.

I. Background

This case is ancillary to a patent infringement action pending in the district court for the Northern District of Georgia. The plaintiffs in the Georgia action, Go Medical Industries Pty., Ltd., Go Medical USA, Inc., and Alexander G. B. O'Neil (collectively "Go Medical"), are insured by Connecticut Indemnity Company ("CIC") under a patent enforcement litigation expense insurance policy. The insurance policy provides that CIC will reimburse Go Medical for legal expenses Go Medical incurs in lawsuits to prevent or recover for infringement on Go Medical's patent, U.S. Patent No. 4,652,259 ("the '259 patent").

On April 1, 1992 Go Medical submitted a claim to CIC for authorization to pursue a patent infringement action against C.R. Bard, Inc. Under the terms of the **[*3]** policy, CIC is entitled to investigate the merits of Go Medical's infringement claim before authorizing coverage of litigation expenses. Accordingly, CIC retained patent counsel, Attorney John C. Linderman, to review the insured's patent and to provide a recommendation as to the merits of the proposed lawsuit against C.R. Bard to enforce Go Medical's patent. As part of this investigation, Attorney Linderman communicated with Go Medical's in-house counsel regarding the merits of the proposed lawsuit. After completing its investigation, CIC authorized Go Medical's claim for litigation expenses related to a patent infringement action against C.R. Bard. Go Medical thereafter commenced the underlying litigation.

In the course of the litigation, C.R. Bard served a third-party subpoena duces tecum on CIC. The subpoena commanded production of all documents and things relating to:

> 1. Any request by Go Medical for authorization to litigate pursuant to the insurance policy;
>
> 2. CIC's granting, withholding, delaying or denying authorization to litigate pursuant to the insurance policy;
>
> 3. CIC's reasons for withholding, delaying or denying authorization to litigate pursuant to **[*4]** the insurance policy;
>
> 4. Any beliefs stated by CIC that the '259 patent is invalid or not infringed by the Bard Touchless Plus (R) assemblies;
>
> 5. Any facts or circumstances adversely affecting the validity of the '259 patent; and
>
> 6. Any notification by CIC to Go Medical made pursuant to Section III(A)(2) of the insurance policy. n1

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n1 This description of the requested documents paraphrases the description contained in the subpoena.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Go Medical has moved for a protective order prohibiting disclosure of certain documents, or portions thereof, and other information in the possession of CIC which are responsive to the subpoena and which Go Medical claims are protected under the attorney-client or work product **privileges.** C.R. Bard has filed a cross-motion to compel the disclosure of the documents which Go Medical has withheld as protected. Go Medical and CIC have both opposed C.R. Bard's motion to compel.

II. Discussion

A. The Attorney-Client **Privilege**

Both Go Medical and CIC contend **[*5]** that many of the documents which are responsive to the subpoena served on CIC are protected from disclosure under the common interest rule of the attorney-client **privilege.** In addition, CIC contends that the attorney-client **privilege** protects certain documents which contain confidential communications between it and its attorney.

The court begins its analysis with a review of the definition of the attorney-client **privilege** under federal common law. n2 The commonly accepted definition of the **privilege** was articulated by Judge Wyzanski in United States v. United Shoe Machinery Corp., 89 F. Supp. 357 (D. Mass 1950):

The **privilege** applies only if (1) the asserted holder of the **privilege** is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and **[*6]** not (d) for the purpose of committing a crime or tort; and (4) the **privilege** has been (a) claimed and (b) not **waived** by the client.

Id. at 358-59.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n2 Questions of **privilege** that arise in the adjudication of federal rights, as in this case, are governed by federal common law. Fed. R. Evid. 501, United States v. Zolin, 491 U.S. 554, 562, 105 L. Ed. 2d 469, 109 S. Ct. 2619 (1989); von Bulow by Auersperg v. von Bulow, 811 F.2d 136, 141 (2d Cir.), cert. denied, 481 U.S. 1015, 95 L. Ed. 2d 498, 107 S. Ct. 1891 (1987).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

The oldest rule of **privilege** known to the common law, the attorney-client **privilege** "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer being fully informed by the client." United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989) (quoting Upjohn Co. v. United States, 449 U.S. 383, 389, 66 L. Ed. 2d 584, 101 S. Ct. 677 (1981)). **[*7]** "The **privilege** is intended to encourage clients to be forthcoming and candid with their attorneys so that the attorney is sufficiently well-informed to provide sound legal advice." United States v. Adlman, 68 F.3d 1495, 1499 (2d Cir. 1995). Legal advice, however, is protected only when disclosure would reveal the confidential information given to the lawyer by the client. Walsh v. Northrop Grumman Corp., 165 F.R.D. 16, 18 (E.D.N.Y. 1996). "Unless the legal advice reveals what the client has said, no legitimate interest of the client is impaired by disclosing the advice." SCM Corp. v. Xerox Corp., 70 F.R.D. 508, 522 (D. Conn.) (Newman, J.), appeal dismissed, 534 F.2d 1031 (2d Cir. 1976).

The party asserting the **privilege** has the burden to demonstrate that the **privilege** applies to the information in question. United States v. Construction Products Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996).

1. Go Medical and CIC's Claim of **Privilege** Under the Common Interest Rule

Go Medical and CIC contend that documents which Go Medical provided to CIC as part of Go Medical's claim for coverage of its litigation **[*8]** expenses are protected from disclosure under the common interest rule of the attorney-client **privilege.** The court disagrees.

The common interest rule extends the application of the attorney-client **privilege** in circumstances where the parties are represented by separate counsel but join in a legal defense or enterprise. United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989). Under

the common interest rule, parties and counsel involved in a joint defense or enterprise may disclose **privileged** information to each other without destroying the **privileged** nature of those communications. <u>Griffith v. Davis, 161 F.R.D. 687, 692 (C.D. Cal. 1995)</u>. The rule protects only those "communications made in the course of an ongoing common enterprise and intended to further the enterprise . . . ." <u>United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989)</u>. In addition, the parties claiming protection under the common interest rule "must show that they had a common legal, as opposed to commercial, interest, and that they cooperated in formulating a common legal strategy." <u>Walsh v. Northrop Grumman Corp., 165 F.R.D. 16, 18 (E.D.N.Y. 1996)</u>. **[*9]**

At issue in this litigation are documents containing communications between Go Medical and CIC or CIC's attorneys and documents that Go Medical provided to CIC which contain **privileged** communications between Go Medical and Go Medical's attorneys. Go Medical and CIC assert that all of these documents were provided to CIC in confidence and in furtherance of Go Medical and CIC's common interest in an effective and efficient lawsuit to stop infringement of Go Medical's patent. C.R. Bard responds that the interest of Go Medical and CIC are not sufficiently compatible to fall within the common interest rule because CIC's interest is limited to insuring coverage of Go Medical's litigation expenses. C.R. Bard goes on to argue that the common interest rule is not available to Go Medical and CIC because CIC is not a party to this action. Finally, C.R. Bard argues that a prior decision in this case by Georgia District Court, in which that court found that the requisite common interest does not exist between Go Medical and CIC, collaterally estops Go Medical and CIC from reasserting their claim that documents are protected from disclosure under the common interest rule of the attorney-client **privilege.**

This court holds that the interests of Go Medical and CIC are not sufficiently compatible for the common interest rule to apply. The documents at issue were provided by Go Medical to CIC in connection with Go Medical's claim under the litigation expense insurance policy. Go Medical's purpose in providing these documents to CIC was to try to obtain coverage from CIC for expenses Go Medical would incur in litigation to stop the alleged infringement of its patent. However, whereas Go Medical's interest is in protecting its patent, CIC has no interest in the <u>'259</u> patent. CIC's interest in Go Medical's infringement claim is limited to CIC's coverage of Go Medical's litigation expenses. An insurer's contractual obligation to pay its insured's litigation expenses does not, by itself, create a common interest between the insurer and the insured that is sufficient to warrant application of the common interest rule of the attorney client **privilege.** <u>In re Pfizer Inc. Securities Litigation, 1993 U.S. Dist. LEXIS 18215,</u> No. 90 Civ. 1260(SS), 1993 WL 561125 at *8 (S.D.N.Y., Dec. 23, 1993) (rejecting argument that an insured and its insurer share common interest about a legal matter and holding that disclosure by insured to insurer **waived** the attorney-client **privilege**); <u>In re Imperial Corp. of America, 167 F.R.D. 447, 451-53 (S.D. Ca. 1995)</u> **[*10]** (joint defense **privilege** generally does not protect communications between insured party to litigation and non-party insurer).

This court holds that the documents which Go Medical submitted to CIC as part of its claim for insurance coverage are not protected under the common interest rule of the attorney-client **privilege.** n3 The court does not reach the other arguments raised by C.R. Bard on this issue.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 This court's holding is in accord with the decision by the Georgia District Court in a prior action between the same parties. See <u>Go Medical Industries Pty., Ltd. v. C.R. Bard, Inc., 1995 U.S. Dist. LEXIS 22248,</u> No. 1:93 CV1538-HTW, 1995 WL 605802 (N.D. Ga., July 6, 1995). In that case, court held that the common interest rule did not apply to communications between Go Medical and CIC because both Go Medical and CIC had their

own counsel and CIC did not control Go Medical's relationship with its attorneys.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

2. CIC's Claim of **Privilege**

In addition to the documents which Go Medical and CIC seek to protect from disclosure, **[*11]**  CIC also opposes C.R. Bard's motion to compel with respect to documents that CIC claims contain **privileged** communications between CIC and its attorneys. Because the burden of proving the **privilege** rests on the person or entity claiming the **privilege,** United States v. Construction Products Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996), it is incumbent on CIC to establish that these documents reveal communications made by CIC to its attorney in confidence for the purpose of securing legal advice. See SCM Corp. v. Xerox Corp., 70 F.R.D. 508, 522 (D. Conn.) (Newman, J.), appeal dismissed, 534 F.2d 1031 (2d Cir. 1976).

CIC has submitted a **privilege** log that lists thirty-three documents. See CIC's Submission of Corrected Exhibit 3 dated February 8, 1996 (doc. # 15), Exhibit 3A. Based on a review of this **privilege** log, the court determines that CIC has sustained its burden of showing that the elements of the **privilege** are satisfied with respect to the document listed at number 1 on the log. Based on the log, the court further determines that the attorney-client **privilege** does not protect documents listed at numbers 2, 6, 9, 10, 21 **[*12]**  and 23.

The record before the court is insufficient to permit the court to determine whether the remaining documents listed on the log contain client confidences so as to fall within the scope of the **privilege.** In order for the court to reach the merits of the **privilege** claim, CIC shall first reevaluate its claims of **privilege** in light of this ruling with respect to the documents listed at numbers 3, 4, 5, 7, 8, 11 through 20, 22, and 24 through 33 on CIC's log. After this reevaluation, CIC shall produce all documents as to which CIC does not maintain its claim of **privilege.** To the extent that CIC maintains a claim of **privilege** as to any of these documents, CIC shall submit such documents to the chambers of the undersigned within ten days of the date of this ruling for in camera inspection.

B. The Work Product Doctrine

Go Medical and CIC also claim that several documents responsive to C.R. Bard's subpoena are protected from disclosure under the work product doctrine. C.R. Bard argues that the documents at issue do not constitute work product and, in the alternative, that any work product protection that may be applicable either has been **waived** by Go Medical's actions or **[*13]**  is subordinated to C.R. Bard's need for the documents. Before addressing the specific arguments of the parties, the court reviews the work product doctrine.

Federal law governs the protection afforded under the work product doctrine in federal courts. EDO Corp. v. Newark Insurance Co., 145 F.R.D. 18, 21 (D. Conn. 1992). First articulated by the United States Supreme Court more than 50 years ago in Hickman v. Taylor, 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385 (1947), the work product doctrine since has been substantially incorporated into Rule 26(b)(3) of the Federal Rules of Civil Procedure, which provides, in pertinent part:

a party may obtain discovery of documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking

discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other **[\*14]** means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed. R. Civ. P. 26(b)(3).

The Second Circuit has adopted the formulation of the work product rule set forth in the Wright & Miller treatise:

Documents should be deemed prepared 'in anticipation of litigation,' and thus within the scope of [Rule 26(b)(3)], if 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation.'

United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir. 1998) (quoting Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 Federal Practice and Procedure § 2024, at 343 (1994)). Although materials assembled in the ordinary course of business are not protected under the work product doctrine, the fact that a document is business-related is irrelevant to the question of whether it should be protected under **[\*15]** Rule 26(b)(3). Id. at 1200. "Where a document is created because of the prospect of litigation, analyzing the likely outcome of that litigation, it does not lose protection under [the work product doctrine] merely because it is created in order to assist with a business decision." Id. at 1202.

The work product doctrine shields from disclosure documents and other materials prepared in anticipation of litigation or trial by a party or a party's representative, absent a showing of substantial need and the inability to obtain the substantial equivalent without undue hardship. Fed. R. Civ. P. 26(b)(3); see also In re Grand Jury Subpoenas Dated Oct. 22, 1991 and Nov. 1, 1991, 959 F.2d 1158, 1166 (2d Cir. 1992). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a **privileged** area within which he can analyze and prepare his client's case." United States v. Nobles, 422 U.S. 225, 238, 45 L. Ed. 2d 141, 95 S. Ct. 2160 (1975). By establishing a zone of privacy for strategic litigation planning, the work product doctrine prevents one party from piggybacking on the adversary's preparation. **[\*16]** United States v. Adlman, 68 F.3d 1495, 1501 (2d Cir. 1995).

The degree of protection afforded under the work product doctrine is dependent upon whether the work product is *ordinary* or *opinion* work png tct. A party can obtain discovery of ordinary work product materials by demonstrating substantial need and the inability to obtain the substantial equivalent of the materials without undue hardship. Fed. R. Civ. P. 26(b)(3); Upjohn Co. v. United States, 449 U.S. 383, 400, 66 L. Ed. 2d 584, 101 S. Ct. 677 (1981). Opinion work product, which reflects the mental impressions, conclusions or opinions of an attorney, receives greater protection. Id. at 401-02. Disclosure of opinion work product is particularly disfavored by the courts and requires a far stronger showing of necessity and unavailability by other means. Id. See also United States v. Adlman, 134 F.3d 1194, 1204

(2d Cir. 1998) ("highly persuasive" showing required for opinion work product); <u>S.N. Phelps & Co. v. Circle K. Corp., 1997 U.S. Dist. LEXIS 713,</u> No. 96 CV 5801 (JFK), 1CV 5WL 31197, at *7 (S.D.N.Y., Jan. 28, 1997) (party seeking discovery of opinion work **[*17]** product must demonstrate "extraordinary justification" (citation omitted)).

The party invoking the protection of the work product doctrine has the burden of establishing that the documents at issue were prepared in anticipation of litigation. <u>Helt v. Metropolitan District Commission, 113 F.R.D. 7, 12 (D. Conn. 1986).</u> The burden of proving that the need for the documents overrides the protection of the work product doctrine rests with the party seeking disclosure. Id.

Both Go Medical and CIC assert claims that documents responsive to C.R. Bard's subpoena are protected under the work product doctrine. The court addresses Go Medical and CIC's claims separately.

1. CIC's Claims of Work Product

CIC contends that its activities with respect to the Go Medical insurance claim were conducted in anticipation of trial and are therefore entitled to work product protection. This court has already determined, in the context of a prior discovery dispute between these C.R. Bard and CIC, that CIC "is not in a sound position to resist discovery . . . under Rule 26(b) (3)" because it is not a party to the patent infringement lawsuit. Go Medical Industries Pty, Ltd. v. C. **[*18]** R. Bard, Inc., No. 3:94MC383 (TPS), Discovery Ruling and Order at 9 (December 7, 1994) (citing <u>Gomez v. City of Nashua, 126 F.R.D. 432, 434 n.1 (D. N.H. 1989)).</u> In Gomez, the court held that the State of New Hampshire, which was not a party to the litigation, could not resist discovery under Rule 26(b)(3). See also <u>In re California Public Utilities Commission, 892 F.2d 778, 781 (9th Cir. 1989)</u> (work product doctrine does not protect documents prepared for one who is not a party to the litigation). Accordingly, CIC cannot prevail on its claims of work product because it is not a party to the patent infringement litigation. n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 The fact that CIC cannot press a claim of work product does not mean that the documents in CIC's possession are not work product. The work product doctrine applies to documents prepared by or for a party's insurer. <u>Fed. R. Civ. P. 26(b)(3).</u> Because CIC insures Go Medical's patent, Go Medical has standing to seek protection of work product documents in CIC's possession.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*19]**

2. Go Medical's Claims of Work Product

Go Medical contends that several documents responsive to C.R. Bard's subpoena are protected from disclosure under the work product doctrine. The documents are identified in Go Medical's **privilege** log and are further described in the papers submitted by Go Medical in connection with its motion for protective order. The documents include (1) communications from Go Medical attorneys to CIC attorneys, (2) communications from CIC attorneys to Go Medical attorneys, (3) Go Medical attorney notes, and (4) communications between Go Medical employees. All the documents are in the possession of CIC.

a. Whether the Documents Constitute Work Product

The work product **privilege** attaches to documents that are prepared because of the

prospect of litigation. <u>United States v. Adlman, 134 F.3d 1194, 1202-03 (2d Cir. 1998)</u>. Conversely, documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the prospect of litigation are not work product. <u>Id. at 1202.</u>

C.R. Bard argues that responsive documents in CIC's possession do not constitute protected **[*20]** work product because they were prepared by or for CIC in the regular course of CIC's business. The court disagrees. Unlike the majority of cases where the regular course of business may be distinguished from circumstances involving the prospect of litigation, the facts of this case present the unusual situation where the regular course of CIC's business--at least insofar as it pertains to the evaluation of litigation expense policy claims--is conducted precisely because of the prospect of litigation.

The responsive documents are described by Go Medical as containing either legal impressions of Go Medical's counsel, material developed by Go Medical's counsel alone or with CIC's counsel in connection with possible issues in the anticipated litigation, legal opinions and impressions of counsel regarding issues based on information supplied by Go Medical, and counsel's strategies for the manner in which to bring suit. These documents were created as part of or as a result of Go Medical's claim for coverage of litigation expenses that Go Medical expected to incur in bringing suit against C.R. Bard. These documents were therefore created because of anticipated litigation, and would not **[*21]** have been prepared but for the prospect of that litigation.

Based on the information provided, the court finds that the documents identified by Bates Nos. 400363-400368, 400356-400362A, 400332, 400333-400335, 400335A, 400336, 400337-400341A, 400342-400344A, 400345-400346 and 400347-400355 were prepared because of the prospect of litigation by either Go Medical or its insurer and therefore constitute work product. Moreover, because the documents contain the mental impressions, conclusions, opinions or legal theories of counsel, the court further determines that the work product at issue is not simply ordinary work product but is opinion work product and therefore deserving the highest degree of protection. See <u>United States v. Adlman, 134 F.3d 1194, 1204 (2d Cir. 1998).</u>

b. Whether Work Product Protection Was **Waived**

C.R. Bard contends that Go Medical **waived** any work product protection applicable to these documents by submitting them to CIC. The court disagrees. Unlike the attorney-client **privilege,** "the work product **privilege** is not automatically **waived** by any disclosure to third persons." <u>In re Pfizer Inc. Securities Litigation, 1993 U.S. Dist. LEXIS 18215,</u> No. 90 Civ. 1260 (SS), 1993 WL 561125 **[*22]** at *6 (S.D.N.Y., Dec. 23, 1993). Instead, courts generally find **waiver** of work product protection only when "the disclosure 'substantially increases the opportunity for potential adversaries to obtain the information.'" Id. (quoting <u>In re Grand Jury Subpoenas Dated Dec. 18, 1981 and Jan. 4, 1982, 561 F. Supp. 1247, 1257 (E.D.N.Y. 1982)</u>). See also <u>In re Steinhardt Partners, L.P., 9 F.3d 230, 235 (2d Cir. 1993)</u> ("voluntary disclosure of work product to an adversary **waives the privilege** as to other parties"); <u>Stix Products, Inc. v. United Merchants & Mfrs., Inc., 47 F.R.D. 334, 338 (S.D.N.Y. 1969)</u>("The work-product **privilege** should not be deemed **waived** unless the disclosure is inconsistent with maintaining secrecy from possible adversaries."). Go Medical submitted its work product to CIC for the purpose of obtaining insurance coverage to pursue its claims against C.R. Bard. This disclosure did not substantially increase the opportunity for C.R. Bard to obtain its work product. The court therefore holds that Go Medical did not **waive** the work product protection available to the documents at issue by sharing them with its insurer.

C.R. **[*23]** Bard next argues that Go Medical **waived** its claim of work product by relying on the fact that CIC authorized payment of Go Medical's litigation expenses as a defense to C.R. Bard's counterclaim that Go Medical filed the infringement suit with knowledge that it

was baseless. In support of its contention that Go Medical is affirmatively relying on CIC's authorization of the insurance claim, C.R. Bard cites to a portion of Go Medical's argument and to a request for admission which Go Medical served on C.R. Bard.

The court agrees that Go Medical cannot rely on CIC's approval of the insurance claim as a defense to the counterclaim and simultaneously withhold documents on which that approval is based. However, the excerpt from Go Medical's argument and a single discovery request are insufficient to permit the court to find that Go Medical is relying on CIC's authorization as a defense to C.R. Bard's counterclaim. Accordingly, the court finds no **waiver** based on the record before it.

c. Whether C.R. Bard's Need for Documents Overrides Work Product Protection

C.R. Bard argues that it is entitled to the documents even if they are work product because it has substantial need for them. The **[*24]** court disagrees.

The documents at issue contain opinion work product. Rule 26(b)(3) of the Federal Rules of Civil Procedure makes clear that a showing of "substantial need" sufficient to compel disclosure of ordinary work product is not sufficient to compel disclosure of opinion work product. United States v. Adlman, 134 F.3d 1194, 1204 (2d Cir. 1998). Opinion work product is to be protected unless, at a minimum, a highly persuasive showing is made. Id. Indeed, there is some authority that the protection afforded opinion work product may be absolute. ECDC Environmental, L.C. v. New York Marine and General Ins. Co., 1998 U.S. Dist. LEXIS 8808 at *34, No. 96CIV6033 (BSJ)(HBP) (S.D.N.Y. 1998) (citing cases).

C.R. Bard contends that it needs the documents to show that Go Medical commenced the patent litigation with knowledge that the '259 patent is invalid or not infringed and that Go Medical knew the infringement suit was baseless as a result of communications with CIC. Because CIC and Go Medical are the only sources of this information, C.R. Bard contends that it has established substantial need.

The court is not persuaded that C.R. Bard's need **[*25]** for the documents should override the work product **privilege.** The defendant cannot gain access to the plaintiff's work product simply by claiming that the litigation was commenced with knowledge that the suit was baseless. C.R. Bard has not established the highly persuasive showing required for disclosure of attorney opinion work product, and, therefore, disclosure of these documents is not compelled.

**Conclusion**

Go Medical's motion for protective order (doc. # 1) is granted in part and denied in part and C.R. Bard's cross-motion for order compelling discovery (doc. # 4) is granted in part and denied in part as stated herein.

1. As to the documents listed on Go Medical's **privilege** log, it is hereby ordered that:

> (a) documents that are identified by Bates Nos. 400363-400368, 400356-400362A, 400332, 400333-400335, 400335A, 400336, 400337-400341A, 400342-400344A, 400345-400346 and 400347-400355 are protected from disclosure;

> (b) all other documents listed on the **privilege** log shall be produced within ten days of the date of this ruling.

2. As to the documents listed on CIC's **privilege** log (Exhibit 3A), it is hereby ordered that:

   (a) document number **[*26]** 1 is protected from disclosure; (b) documents numbers 2, 6, 9, 10, 21 and 23 shall be produced; and

   (c) all non-**privileged** documents listed at numbers 3, 4, 5, 7, 8, 11 through 20, 22, and 24 through 33 shall be produced. To the extent that CIC maintains its claim of **privilege** as to any of these documents in light of this ruling, CIC shall submit such documents to the chambers of the undersigned within ten days of the date of this ruling for in camera inspection.

SO ORDERED this 14th day of August, 1998 at New Haven, Connecticut.

DONNA F. MARTINEZ

UNITED STATES MAGISTRATE JUDGE

Source: **Combined Source Set 5**  **- 7th Circuit - US District Court Cases; 2nd Circuit - US District Court Case...**
Terms: **privilege! and waive! and "insurance coverage" w/p patent!**    (Edit Search | Suggest Terms for My Search)
View: Full
Date/Time: Wednesday, May 16, 2007 - 7:17 PM EDT

* Signal Legend:
&#9737; - Warning: Negative treatment is indicated
&#9410; - Questioned: Validity questioned by citing refs
&#9651; - Caution: Possible negative treatment
&#9672; - Positive treatment is indicated
&#9398; - Citing Refs. With Analysis Available
&#9432; - Citation information available
* Click on any *Shepard's* signal to *Shepardize*® that case.

&#174; **LexisNexis**®    About LexisNexis | Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.