UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OMAX CORPORATION, a Washington corporation,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>FLOW INTERNATIONAL CORPORATION, a Washington corporation,<br><br>　　　　Defendant.<br><br>FLOW INTERNATIONAL CORPORATION, a Washington corporation,<br><br>　　　　Counterclaimant,<br><br>　v.<br><br>OMAX CORPORATION, a Washington corporation,<br><br>　　　　Counterclaim Defendant. | Case No. C04-2334L<br><br>ORDER GRANTING IN PART AND DENYING IN PART PARTIES' MOTIONS TO COMPEL AND FOR IN CAMERA INSPECTION OF DOCUMENTS |

**I. INTRODUCTION**

This matter comes before the Court on Omax's "Motion to Compel Production of Documents and Things and Further Responses to Interrogatories" (Dkt. #273) and Flow's

ORDER GRANTING IN PART AND
DENYING IN PART PARTIES'
MOTIONS TO COMPEL AND FOR
IN CAMERA INSPECTION OF
DOCUMENTS

1

"Motion to Compel Discovery And/Or for In Camera Inspection of Documents Related to Flow's Laches Defense" (Dkt. #266).  In recent weeks the parties made progress in resolving a number of the issues raised in Omax's motion.  Thus, the only remaining issues before the Court are (1) whether Flow should be compelled to produce its "Project" database; (2) whether Flow should be compelled to produce additional documents relating to its contract negotiations with Sodick; and (3) whether the Court should review particular documents related to communication between Omax and Litigation Risk Management ("LRM") *in camera* to determine if they are privileged as claimed by Omax.

## II.  DISCUSSION

**A.     Project Database**

In its Fifth Request to Produce Documents, Request 5-1, Omax sought:

> **All databases maintained by Flow, including but not limited to Flow's J.D. Edwards database and its Project database,to the extent sufficient to show the following:**
>
> **(a) for the period of January 1, 1996 to the present, the date or approximate date or time of each purchase of a Flow fluid jet cutting system by an end-user purchaser, and for each such transaction, the following:**
>
> > **(i) the identity of the purchaser.**
> >
> > **(ii) the system components (including accessories and supplies) purchased.**
> >
> > **(iii) the agreed purchase price or prices including ay [sic] price or prices separately stated for any system component or components (including but not limited to accessories and supplies).**
> >
> > **(iv) the date (if available) and price terms of each quotation made by flow [sic] to the purchaser prior to the purchase.**
>
> **(b) for the period January 1, 2002 to the present, the date or approximate date or time and the price terms of each quotation by Flow for sale of a fluid jet cutting system, together with the identify of the person or entity to whom the quotation was made (excepting quotations**

**referred to in and thus covered by subparagraph (a) (iv) above).**

Flow objects to the request on the grounds that the databases contain far more data than is required by Omax, that it is unlikely that the databases could be used effectively by Omax's experts due to their complex and proprietary nature, and that Omax already has ample access to the sales data contained in the databases. Omax maintains that it requires access to the databases to verify the accuracy of Flow's spreadsheet representations concerning its unit sales and to determine the prices at which Flow has sold and offered to sell its system to customers.

Omax indicates that it is currently in negotiations with Flow to institute a method of verifying Flow's sales, revenue and cost figures that would not require Flow to turn over the J.D. Edwards database. Therefore, the only question currently before the Court regarding Flow's databases relates to whether Flow should be ordered to turn over its "Project" database. Omax maintains that the database contains Flow's price quotations to each customer and potential customer for waterjet cutting systems that allegedly infringed its patents. Flow does not dispute that the "Project" database contains information related to customer quotes, but instead argues that the data is incomplete and potentially misleading. Specifically, Flow has explained that information related to a particular quote is entered into the system at the time it is prepared for a customer, but that the equipment and options ultimately purchased by the customer often change between the time of the initial quote and the final sale. This, Flow argues, makes the records contained in the "Project" database misleading to someone approaching the data from Omax's perspective because it creates disparities between the quote price and the ultimate sales price that may be tied to factors not apparent in the database itself. Flow also argues that the database is incomplete because it contains less information for sales and quotes between 1996 and 2000 than it does for later years and because it does not contain information for sales outside of North America.

ORDER GRANTING IN PART AND
DENYING IN PART PARTIES'                3
MOTIONS TO COMPEL AND FOR
IN CAMERA INSPECTION OF
DOCUMENTS

The Federal Rules of Civil Procedure provide for broad discovery: "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Though Flow may very well be correct that the "Project" database is incomplete and potentially unhelpful in explaining differences between initial price quotations and final sales prices, Omax is nevertheless still entitled to the information contained in the "Project" database, at least as it relates to initial price quotations offered to customers and potential customers. Though the data may be of limited value, it does have some value and it is relevant to Omax's damages case. Further, after reviewing the parties' submissions, it does not appear that producing the "Project" database will entail the same problems of cost and complexity that are associated with producing the entire J.D. Edwards database. Omax's motion to compel the production of data relating to quotes given to customers and potential customers contained in Flow's "Project" database is granted.

**B.     Sodick Documents**

Omax also moves to compel additional documents pertaining to Flow's contract negotiations with a company called Sodick. Though Flow has already produced documents relevant to the transaction, including a draft of the contract between the two companies and a "Memorandum of Understanding," Omax seeks additional documents that may show "dollar amounts Flow has proposed to Sodick . . . as compensation for use of FlowMaster." Reply at p. 4. Flow maintains that it has "produced everything it has that would show the proposed terms of its contemplated – but not finalized – agreement with Sodick," and that there are no plans for a licensing agreement apart from the end-user license packaged with the hardware to be sold. Opposition at p. 8. The Court takes Flow at its word. If Flow enters into a final agreement with Sodick in the future, it is expected that Flow would supplement its discovery accordingly. Omax's motion to compel additional documents related to Sodick is denied.

**C.     Documents Related to Flow's Laches Defense**

Flow requests that the Court conduct an *in camera* inspection of twelve documents listed on Omax's privilege log that relate to communications between Omax, a company called Litigation Risk Management ("LRM") and a number of other third parties. Flow contends that (1) there is reason to believe that these communications are not privileged and (2) that even if the documents do contain some privileged information they should be produced in redacted form because they may contain factual statements that are highly relevant to its laches defense. Given the complexity of the privilege issues surrounding these documents, the Court agrees that an *in camera* inspection of the documents is necessary. See Clarke v. Am. Commerce Nat. Bank, 974 F.2d 127, 129 (9th Cir. 1992) ("A district court may conduct an in camera inspection of alleged confidential communications to determine whether the attorney-client privilege applies."). Omax shall submit copies of the documents identified in Flow's motion for *in camera* review within 5 court days of this order. After reviewing the documents, the Court will issue an order identifying which documents, or portions of documents, it believes are privileged.

### III.  CONCLUSION

The Court therefore GRANT IN PART and DENIES IN PART Omax's motion to compel (Dkt. #273). The Court will rule on Flow's motion to compel (Dkt. #266) after it has had the opportunity to review the documents in question.

DATED this 22nd day of June, 2007.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge